**Walter L. LAAK, Plaintiff and Respondent,**

v.

**Mable LAAK, Defendant and Appellant.**

**No. 14086.**

Supreme Court of Utah.

Jan. 26, 1976.

James R. Brown, of Jardine, Baldwin, Brown & Sessions, Salt Lake City, for defendant and appellant.

Dale J. Craft, Salt Lake City, for plaintiff and respondent.

*Federated Milk Prod. Assn. v. Statewide Plumb. & Heat. Co.*, 11 Utah 2d 295, 358 P.2d 348.

HENRIOD, Chief Justice:

Appeal from the denial of a petition to increase an alimony award. Affirmed with no costs on appeal.

The litigants married in 1950 and had two boys as issue. A divorce followed, as did a remarriage,—to each other in 1960,— as did another divorce, in 1968, where love and discontent seemed to have provoked a domestic confrontation that appears to have become calloused.

The second time round resulted in a stipulated $200 a month alimony award when the first born, Gary, would become emancipated, plus the equity in the home, $500 attorney's fees, a piece of property in Cedar City, a car and household miscellany, a requirement that Mr. L pay $350 per month child support, loan against two insurance policies, health insurance premiums, back taxes for the Cedar City property, etc. Mr. L received an indebted car and a 10-share railroad stock certificate. All this was incorporated in a written stipulation agreed to by everyone, including the parties, the attorneys and the court. It was incorporated in a decree, with no fouls declared and with full agreement.

After a while, in 1969, another stipulation and agreement passed through the divorce court door, where custody of the younger boy, Walter, was switched to the father by the court's order, all consonant with the stipulation, and Mr. L was required to pay $75 support money to the Juvenile Court in whose custody the older boy meantime had been lodged, which custody later was assumed by the Army.

The above history, as history does, repeated itself, and Mrs. L, after all the stipulations and one thing another, on the ground of changed circumstances, sought out the present plea for relief from $200 per month alimony, to something higher.

The trial judge heard, heeded and held, that under the particular circumstances of this case, Mrs. L, an erstwhile and conceded employable, had not convinced him that always a court should pay no heed to written stipulations of the parties.

In a sense she may have been right, but the matter may be overdone. Promissory integrity, after all, is a condiment to be considered in arriving at a palatable fare. In this case we think one's bond has something to do with justice and must be considered along with the principle that it is a very important adjunct to the serious obligation of employing fair play in domestic relations matters, depending on the particular facts of each case.

Saying so, we also say Mrs. L's written obligation must be considered along with her possible, conceivable entitlement to renege on such stipulation in family matters.

Cases are legion and vari-colored in the process of weighing equities in cases like this, and we simply can't say that one particular case must prevail but think that equitable malleability must rule, perhaps under other authorities.

We think that withal the admonition very aptly put to us about examining both the law and the facts in cases like this on appeal,—and applying such truism, we have difficulty in resolving such principle, other than to affirm the trial judge's conclusions here, which we do, in further deference to another ingrained principle that he may have had a better opportunity to arbitrate the facts than we, when we are faced with a lukewarm record.

Appellant stated no points on appeal, but simply says the alimony should have been upped,—strictly on evidentiary concern. We are not convinced that the trial court betrayed its discretion here and we affirm.

ELLETT, CROCKETT, TUCKETT, and MAUGHAN, JJ., concur.